**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOHN CRANE PRODUCTION SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:11-cv-3237 |
| | ) | |
| v. | ) | |
| | ) | |
| R2R AND D, LLC; FINALROD, INC., and | ) | |
| RUSSELL P. RUTLEDGE | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO DISQUALIFY MATTHEWS, LAWSON & JOHNSON, PLLC
FROM REPRESENTING DEFENDANTS**

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    STATEMENT OF THE FACTS ...................................................................2

    A.     The Matthews Firm's Prior Representation of Plaintiff .........................2

        1.     The Matthews Firm's Participation in the Fiberod Asset
            Purchase Transaction ..................................................................2

        2.     The Matthews Firm's Prosecution of FIBEROD Trademarks
            At Issue in this Action and Other Trademarks.............................5

        3.     Matthews Firm's Ongoing Lawsuit to Recover Attorneys' Fees
            from Plaintiff...............................................................................6

III.   LEGAL STANDARD......................................................................................7

    A.     The Two-Part Test for Disqualification...................................................9

    B.     Policy Considerations and Balancing of Interests .................................10

IV.    THE MATTHEWS FIRM'S REPRESENTATION OF DEFENDANTS
      VIOLATES TEXAS DISCIPLINARY RULE OF PROFESSIONAL
      CONDUCT 1.09 AND MATTHEWS FIRM SHOULD BE DISQUALIFIED ...............11

    A.     The Matthews Firm Had an Attorney-Client Relationship with Plaintiff..............11

    B.     The Former and Current Matters Handled by the Matthews Firm Are
          the "Same or Substantially Related"......................................................12

    C.     Disqualification is Also Proper Under ABA Model Rule 1.9(a)
          Because Defendants' Interests in this Action are "Materially Adverse"
          to Plaintiff .............................................................................................14

    D.     Policy Considerations Weigh In Favor of Disqualification...................14

V.     GRANTING THE MOTION TO DISQUALIFY WOULD NOT UNDULY
      PREJUDICE OR BURDEN DEFENDANTS .................................................15

VI.    CONCLUSION..............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*In re American Airlines, Inc.*,
  972 F.2d 605 (5th Cir. 1992) ...................................................................................8, 9

*American Can Company v. Citrus Feed Co.*,
  436 F.2d 1125 (5th Cir. 1971) ...................................................................................10

*In re Dresser Indus. Inc.*,
  972 F.2d 540 (5th Cir. 1992) ..............................................................................8, 10, 15

*Duncan v. Merrill Lynch, Pierce, Fanner & Smith, Inc.*,
  646 F.2d 1020 (5th Cir. 1981) ............................................................................9, 10, 15

*E.F. Hutton & Company v. Brown*,
  305 F. Supp. 371 (S.D. Tex. 1969) ...........................................................................9

*F.D.I.C. v. U.S. Fire Ins. Co.*,
  1304, 1314 (5th Cir. 1995)........................................................................................10

*Johnston v. Harris County Flood Control Dist.*,
  869 F.2d 1565 (5th Cir. 1989 .....................................................................................9

*Lawfinders Associates, Inc. v. Legal Research Center, Inc.*,
  65 F. Supp. 2d 414 (N.D. Tex. 1998) .......................................................................13

*Matter of Consolidated Bankshares, Inc.*,
  785 F.2d 1249 (5 th Cir. 1986).....................................................................................8

*Power Mosfet Techs., L.L.C., v. Siemens AG*,
  No. 2:99-CV-168, 2002 WL 32785219 (E.D. Tex. Sept. 30, 2002).........................10

*Qwest Communs. Int'l v. Arnette*,
  No. 3:05-CV-1614-G, 2006 U.S. Dist. LEXIS 17 (N.D. Tex. Jan. 3, 2006)............13

*Rembrandt Tech., L.P. v. Comcast Corp.*,
  No. 2:05-cv-443TJW, 2007 WL 470631 (E.D. Tex. Feb. 8, 2007).........................15

*Woods v. Covington Cty. Bank*,
  537 F.2d 804 (5th Cir. 1976) ......................................................................................9

*Woolley v. Sweeney*,
  No. Civ. A.3:01-CV-1331-BF, 2003 WL 21488411 (N.D. Tex. May 13, 2003) ..................10

**OTHER CASES**

*In re EPIC Holdings, Inc.*,
    985 S.W.2d 41 (Tex. 1998)........................................................................................9

*NCNB Tex. Nat'l Bank v. Coker*,
    765 S.W.2d 398 (Tex. 1989)....................................................................................15

**RULES**

ABA Model R. Prof'l Conduct Rule 1.9(a) ............................................................8, 14

L.R. 83.8(b) and (e)..................................................................................................7

Tex. Disciplinary R. Prof'l Conduct Rule 1.05(b)......................................................7

Tex. Disciplinary R. Prof'l Conduct Rule 1.09(a)-(b) .......................................1, 8, 11

## I.     INTRODUCTION

Plaintiff John Crane Production Solutions, Inc. ("Plaintiff" or "JCPS") files this brief in support of its motion to disqualify the Matthews Firm, PLLC, d/b/a Matthews, Lawson & Johnson, PLLC, f/k/a/ Matthews, Lawson & Bowick PLLC (hereinafter "Matthews Firm") from representing Defendants R2R and D, LLC, Finalrod, Inc., and Russell P. Rutledge (collectively, "Defendants") in this action.  In this lawsuit, Plaintiff seeks to protect its valuable rights in the federally registered FIBEROD trademark via its assertion of claims for federal and common law trademark infringement and unfair competition by Defendants for their use of, and attempts to federally register, the confusingly similar trademark FINALROD for identical goods.  The Matthews Firm has a conflict of interest based on: (i) its role as trademark prosecution counsel for the FIBEROD trademarks central to this action; (ii) its role as intellectual property counsel for the prior owners of the FIBEROD trademark from whom Plaintiff acquired its rights; (iii) its role as counsel involved in the acquisition by Plaintiff of the FIBEROD trademarks; and (iv) its post-sale representation of Plaintiff itself in the prosecution and maintenance of these same FIBEROD trademarks, as well as other intellectual property matters.  The Matthews Firm's representation of Defendants in this action is a clear violation of Texas Disciplinary Rule of Professional Conduct 1.09(a)-(b).

As noted above, Plaintiff filed this trademark infringement suit alleging that Defendants' use and registration of the FINALROD trademark in connection with the marketing and sale of fiberglass "sucker rods" is likely to cause confusion with Plaintiff's federally registered and incontestable FIBEROD trademark for the identical goods.  Plaintiff has filed a motion for preliminary injunction in this Action, requesting that this Court enjoin Defendants from using the term FINALROD or any confusing similar mark or name in connection with the sale and

marketing of sucker rods and related products or services used for oil and gas recovery, extraction, and dewatering.

In a letter dated December 6, 2011, Plaintiff informed Terry B. Joseph of the Matthews Firm that it believed the Matthews Firm had a conflict of interest for the reasons described above, and should thus withdraw from further representing Defendants in this matter.  Mr. Joseph refused to withdraw and instead, on December 23, 2011, filed an extension of time on behalf of Defendants to file their Answer in this action.  This action is in its initial stages.  As of the date of this filing, no Answer has yet been filed, no discovery commenced, and no scheduling orders issued.  The case is not yet on the Court's docket for dispositive motions or trial.  The facts, governing policy, and balancing of the equities all favor prompt disqualification of the Matthews Firm in this case.

## II.      STATEMENT OF THE FACTS

### A.      The Matthews Firm's Prior Representation of Plaintiff

#### 1.      The Matthews Firm's Participation in the Fiberod Asset Purchase Transaction

On March 12, 2008, Plaintiff John Crane Production Solutions, Inc. through its predecessors in interest (hereafter, collectively "JCPS" or "Plaintiff"), entered into an Asset Purchase Agreement to acquire all assets, real and intellectual property, and rights of The Fiber Composite Company, d/b/a Fiberod, Inc., as well as the related entities Fiberod Industries, Fiberod, Inc. and FC Patent, Ltd. (collectively, "Fiberod Inc."). *Declaration of J.L. Thomas, App., Ex. C to Plaintiff's Motion for Preliminary Injunction at ¶ 7.*  The FIBEROD trademarks, and associated trademark registrations and applications, accounted for a significant portion of the purchase price paid by JCPS in that transaction.  The acquired FIBEROD trademark applications and registrations were filed and prosecuted by the Matthews Firm as intellectual property

2

counsel for the selling entities.  Defendant Russ Rutledge was the Chairman and CEO of Fiberod, Inc.

The Matthews Firm was intimately involved in the asset sale as intellectual property counsel for the sellers including, in particular, Fiberod, Inc.  In its role as intellectual property counsel for Fiberod, Inc., the Matthews Firm performed transaction due diligence to support the representations and warranties offered by the sellers regarding the validity of the intellectual property assets sold.  *Appendix, Ex. A at* APPX000086-89; APPX000319-320.  Following the acquisition, Fiberod Inc., and its related entities, whom the Matthews Firm represented, became a part of JCPS.   For several years thereafter, the Matthews Firm served as trademark and patent counsel for JCPS itself, including in its role as counsel of record for the various FIBEROD-formative applications and registrations on file with the U.S. Patent and Trademark Office ("PTO").  Subsequent to the acquisition, the Matthews Firm directed all billing invoices related to its asset purchase due diligence activities to JCPS for payment.  According to these invoices, due diligence activities related to the Asset Purchase Agreement totaled approximately $20,000 and included the following:

- Work on preparing lists of Intellectual Property assets, including research of USPTO for patents and applications, trademarks, service marks, and copyrights;

- Compiling confidential and proprietary information, including listings of "all intellectual property for Fiberod";

- Assisting counsel with revisions to spreadsheets created as exhibits in "due diligence requirement";

- Preparation of due diligence reports with respect to assignments, agreements.

*Appendix, Ex. A at* APPX000086-89; APPX000319-320.[1]  As a result of these activities, the

Matthews Firm had access to confidential information regarding the valuation of the assets

acquired by JCPS in the 2008 transaction (including the FIBEROD trademarks and the purchase

price paid in the sale).

Defendant Rutledge, represented by the Matthews Firm in this lawsuit, and the founder

and principal of the Defendants in the current action, was the founder and principal of the selling

entitles, an owner of the business, and a signatory to the 2008 Asset Purchase Agreement.

Pursuant to the terms of that Agreement, Defendant Rutledge agreed to conduct no future

business under the name or mark FIBEROD or any names "similar thereto," as reflected in

Paragraph 5.11 of the Agreement:

> 5.11    Change of Name. . . .  From and after the Closing Date, the Sellers shall not do
> business under the names "Fiberod", "Fiber Composite", "FC Patent" or any names
> similar thereto in any jurisdiction and the Sellers and their Affiliates shall execute any
> documentation necessary for Buyer or any of its Affiliates to use the names "Fiberod",
> "Fiber Composite", "FC Patent" or any names *similar thereto*.

*Complaint at Exhibit A* (Emphasis Added).  Defendant Rutledge's current use of and attempts to

federally register the FINALROD trademark in violation of Paragraph 5.11 of the Agreement is

the subject of this litigation.  And despite its prior role as the prosecuting attorneys for the

FIBEROD trademarks, as counsel for the sellers in the Asset Purchase transaction, and as

intellectual property counsel to Plaintiff itself for several years following the acquisition,

including as counsel of record for the various FIBEROD marks, the Matthews Firm now seeks to

---

[1] Invoice materials found at *Appendix, Ex. A at* APPX000086-89 and APPX000319-320
reference "Sale of the Fiber Composite Company to Allegiance Capital Corporation."
Allegiance Capital Corporation is the investment banking entity hired by Defendant Rutledge to
carry out the asset purchase of Fiberod, Inc. by John Crane Production Solutions Inc.

defend Defendant's use and registration of, and to act as prosecution counsel for, the

FINALROD trademark.

**2.    The Matthews Firm's Prosecution of FIBEROD Trademarks
At Issue in this Action and Other Trademarks**

In addition to serving as intellectual property counsel for sellers during the 2008 sale of

Fiberod, Inc. to Plaintiff, the Matthews Firm also served as intellectual property counsel for the

prosecution and maintenance of the FIBEROD trademarks asserted by Plaintiff in this lawsuit.

In 2003 and again in 2005, the Matthews Firm filed applications to register the FIBEROD word

mark and FIBEROD Logo, respectively, with the PTO on behalf of Fiberod, Inc.  *Appendix, Ex.*

*B  at* APPX000371-377.  The Matthews Firm also acted as trademark prosecution counsel for a

2007 application to register the related mark FIBEROD SUCKEROD, Serial No. 76672523

(which was subsequently abandoned).[2]  *Appendix, Ex. C at* APPX000470-477.[3]

---

[2] The Matthews Firm also served as trademark prosecution counsel for several other trademarks
acquired by Plaintiff, namely, WE PUT THE ROD IN PRODUCTION, Registration No.
3548648, as well as the following abandoned trademarks and service marks: FIBEROD
SUCKEROD (Serial No. 76672523), GREEN ROD (Serial No. 76687363), THE GREEN
MACHINE (Serial No. 76691555),WE PUT THE GREEN IN PRODUCTION (Serial No.
76687366) and THE GREEN IN THE ROD (Serial No. 76687365).  *Appendix, Ex. A at*
APPX000066-67 (GREEN ROD); APPX000222-223 (WE PUT THE ROD IN PRODUCTION);
APPX000225-227 and APPX000230-231 (THE GREEN IN THE ROD); APPX000235-000237
(WE PUT THE GREEN IN PRODUCTION); APPX000244-245 (THE GREEN MACHINE).

[3] The FIBEROD application reflects the appointment by then trademark applicant Fiberod
Composite Company, Inc. of the following attorneys from the Matthews Firm in his Power of
Attorney: Guy E. Matthews, William E. Johnson, Jr., Robert M. Bowick, Jr. and Taras P.
Bemko.  *Appendix, Ex. B at* APPX000376.  In the FIBEROD SUCKEROD application,
Defendant Rutledge initially appointed the following attorneys from The Matthews Firm in his
Power of Attorney for the FIBEROD SUCKEROD application: Guy E. Matthews, William E.
Johnson, Jr., Timothy W. Johnson, Robert M. Bowick, Jr., Taras P. Bemko and Sarah J. Ring.
*Appendix, Ex. C at* APPX000475.  Russell P. Rutledge executed both applications as Chairman
and CEO of the applicant.  *Appendix, Ex. B at* APPX000374; *Appendix, Ex. C at* APPX000473.

Over the course of its prosecution of the FIBEROD trademarks, attorneys at the Matthews Firm made a number of statements in support of the uniqueness, distinctiveness, protectability, and registrability of the FIBEROD mark.  For example, in response to the PTO's initial refusal of registration on mere descriptiveness grounds, the Matthews Firm argued that the FIBEROD "mark is at most merely suggestive," and therefore registrable, as "'fiber' is not descriptive of 'fiberglass,'" and "FIBEROD is a coined word and will not be found in any dictionary of which the applicant is aware."  *Appendix, Ex. B at* APPX000356-357.

Despite the assertions and actions detailed above, the Matthews Firm is now representing Defendants in their claims that the FINALROD mark does not infringe Plaintiff's FIBEROD mark and in prosecuting applications to register the FINALROD mark.

### 3. Matthews Firm's Ongoing Lawsuit to Recover Attorneys' Fees from Plaintiff

Not only has the Matthews Firm represented Plaintiff in relation to the very trademarks at issue in this action, the Matthews Firm has also initiated and is currently pursuing an action against Plaintiff in the District Court of Howard County, Texas, 118th Judicial District, for recovery of allegedly unpaid legal fees totaling $380,657.24.  *Appendix, Ex. A at* APPX000004. Of these legal fees, approximately $273,683 pertains to patent matters exclusively, and $108,925.25 pertains to services performed in connection with patent and trademark/service mark matters.  *Appendix, Ex. A at* APPX000004.

The Matthews Firm's own language from the Complaint in that ongoing action is instructive in this case.  According to the Matthews Firm,

> John Crane was well aware of the legal services being provided by Plaintiff [The Matthews Firm], both before and after it acquired the intellectual property of Fiberod, and expressly agreed and authorized Plaintiff to continue to provide said legal services.

*Appendix, Ex. A at* APPX000003-4.  In support of that complaint, the Matthews Firm attached a voluminous accounting of legal services provided to JCPS in the years following the Asset Purchase transaction.  That accounting offers a detailed summary of the Matthews Firm's involvement in the prosecution, registration, and protection of the FIBEROD trademarks, both before and after their sale to Plaintiff.  *Appendix, Ex. A; see, e.g.,* APPX000058-59; APPX000252-53; APPX000257.

### III.    LEGAL STANDARD

The Texas Disciplinary Rules of Professional Conduct govern attorney conduct in this Court.  LR 83.8(b) and (e).  Rule 1.09 specifically addresses conflicts of interest arising from prior representations.  It reads:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
> (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
>
> (2) if the representation in reasonable probability will involve a violation of Rule 1.05[4]; or
>
> (3) if it is the same or substantially related matter.

---

[4] Texas Disciplinary Rule of Professional Conduct 1.05(b) forbids a lawyer to (1) reveal confidential information of a client or a former client to: (i) a person that the client has instructed is not to receive the information; or (ii) anyone else, other than the client, the client's representatives, or the members, associates or employees of the lawyer's law firm; (2) use confidential information of a client to the disadvantage of the client unless the client consents after consultations; (3) *use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known*; (4) use privileged information of a client for the advantage of the lawyer or of a third person, unless the client consents after consultation.  Tex. Disciplinary R. Prof'l Conduct Rule 1.05 (Emphasis added).

(b) Except to the extent authorized by Rule 1.10, when lawyers are to have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

Tex. Disciplinary R. Prof'l Conduct Rule 1.09(a)-(b).  When deciding a motion to disqualify, the court should consider both the Texas Disciplinary Rules of Professional Conduct, as well as applicable national ethical standards, such as the ABA Model Rules of Professional Conduct ("ABA Model Rules").  *See In re Dresser Indus. Inc*., 972 F.2d 540, 543-45 (5th Cir. 1992).  The ABA Model Rule 1.9 is identical to Texas Disciplinary Rule of Professional Conduct Rule 1.09 in all relevant respects, and contains the additional "materially adverse" requirement.[5]

In Texas, an attorney or law firm may *not* represent a client when that representation "questions the validity" of work performed on behalf of a former client, and where that representation involves the same matter or a substantially related matter.  *Id*.  When an attorney's current representation violates Rule 1.09, he or she must withdraw as counsel.  *Id*.  ("A lawyer who personally has formerly represented a client in a matter **shall not thereafter** represent another person in a matter adverse to the former client…") (emphasis added).

Enforcement of the disqualification rules serves not only to "preserve the purity of particular trials," but also to "protect individual parties against the adverse use of information" and to "aid the frank exchange between attorney and client."  *In re American Airlines, Inc.*, 972 F.2d 605, 619 (5th Cir. 1992).  The Fifth Circuit has stated that it shall "remain sensitive to preventing conflicts of interest."  *Id*. (citing *Matter of Consolidated Bankshares, Inc*., 785 F.2d 1249, 1256 (5 th Cir. 1986)).  In addition, a "[d]istrict [c]ourt is *obliged* to take measures against

---

[5] ABA Rule 1.9(a) states: "A lawyer who has formally represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation …"

unethical conduct occurring in connection with any proceeding before it." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (emphasis added).

### A.      The Two-Part Test for Disqualification

This Court applies a two-part test to determine whether a violation of Rule 1.09 has occurred and whether counsel must be disqualified. *Id*. at 614.  Specifically, the party seeking disqualification must establish the following elements:

> (1) an actual attorney-client relationship between the moving party and the attorney or law firm that party seeks to disqualify, and .
>
> (2) a substantial relationship between the subject matter of the former and present representations.

*Id*. (citing *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989)).

The Texas Supreme Court has held that two matters are "substantially related" for the purposes of Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct when a "genuine threat exists that a lawyer may divulge in one matter confidential information obtained in the other because the facts and issues involved in both are so similar." *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 51 (Tex. 1998).

Courts within the Fifth Circuit have cited two underlying concerns of the "substantial relationship" test, namely, "the duty to preserve confidences and the duty of loyalty to a former client." *In re American Airlines*, 972 F.2d at 618; *see also E.F. Hutton & Company v. Brown*, 305 F. Supp. 371, 395 (S.D. Tex. 1969) ("If courts protect only a client's disclosures to his attorney, and fail to safeguard the attorney-client relationship itself--a relationship which must be one of trust and reliance--they can only undermine the public's confidence in the legal system as a means for adjudicating disputes."); *Duncan v. Merrill Lynch, Pierce, Fanner & Smith, Inc.*, 646 F.2d 1020, 1027 (5th Cir. 1981) ("the integrity of the judicial system would be sullied if courts tolerated such abuses by those who profess and owe undivided loyalty to their clients").

9

Once the moving party has demonstrated these two factors, the court may *presume* that confidential information relevant to the present litigation was disclosed to the attorney who actually worked on the substantially-related matter during the former representation. *Duncan*, 646 F.2d at 1028.  Moreover, client confidences shared with a single member of a law firm are imputed to all members, and any member of that firm may be barred from participating in a case in which one partner is disqualified. *American Can Company v. Citrus Feed Co*., 436 F.2d 1125, 1128-29 (5th Cir. 1971); *see also Power Mosfet Techs., L.L.C., v. Siemens AG*, No. 2:99-CV-168, 2002 WL 32785219 at * 2 (E.D. Tex. Sept. 30, 2002)("[I]f the movant shows that two matters are substantially related, an irrebutable presumption arises that confidences were in fact shared with counsel.") (citation omitted).

**B.      Policy Considerations and Balancing of Interests**

In addition to the two-part test described above, the court must look to policy considerations, namely, (1) the appearance of impropriety in general, or (2) the possibility that a specific impropriety will occur, and (3) the likelihood that public suspicion from the impropriety outweighs any social interests served by the lawyer's continued participation in the case. *In re Dresser,* 972 F.2d at 544; *see also Woolley v. Sweeney*, No. Civ. A.3:01-CV-1331-BF, 2003 WL 21488411 at *8 (N.D. Tex. May 13, 2003).

The court also must balance the right of a party to choose his own counsel with the court's obligation to preserve the integrity of the proceedings. *F.D.I.C. v. U.S. Fire Ins. Co*., 1304, 1314 (5th Cir. 1995) (A "disqualification motion requires the court to balance the likelihood of public suspicion against a party's right to counsel of choice.")

## IV.   THE MATTHEWS FIRM'S REPRESENTATION OF DEFENDANTS VIOLATES TEXAS DISCIPLINARY RULE OF PROFESSIONAL CONDUCT 1.09 AND MATTHEWS FIRM SHOULD BE DISQUALIFIED

The Matthews Firm's representation of Defendants in this case is a clear violation of Texas Disciplinary Rule of Professional Conduct 1.09(a)-(b) due to the Matthews Firm's prior representation of Plaintiff in connection with the trademarks at issue in this case.  Applying the two-part test for disqualification, both conditions are met, and this Court should preclude the Matthews Firm from representing Defendants in this litigation.

### A.   The Matthews Firm Had an Attorney-Client Relationship with Plaintiff

No one can credibly dispute that an attorney-client relationship existed between Plaintiff and The Matthews Firm.  As indicated in section II(A)(3), supra, the Matthews Firm itself has acknowledged the existence of an attorney-client relationship with Plaintiff in its Complaint for unpaid attorneys' fees, filed in the District Court of Howard County, Texas.  *Appendix, Ex. A.* The Matthews Firm addressed its invoices for legal services to Plaintiff.  These invoices indicate that attorneys and other legal professionals from the Matthews Firm billed over $380,657.24 for professional services while representing Plaintiff, including $108,929.25 for patent and trademark/service mark matters.  *Appendix, Ex. A at* APPX000004.  This representation included prosecution of trademark and patent applications, including correspondence with Examining Attorneys at the PTO, preparation of filings with the PTO, preparation of files and docketing of deadlines, correspondence with the client, prosecution of multiple trademark applications including the trademarks at issue in this case, and performance of trademark searches and/or review of trademark search results.  *Appendix, Ex. A.* As counsel for the prior owners of the FIBEROD trademarks prior to their acquisition by Plaintiff, the Matthews Firm performed due diligence in its role as intellectual property counsel for the sellers and advised regarding the

representations and warranties offered by the sellers to Plaintiff regarding the very FIBEROD

trademarks at issue in this case. *Appendix, Ex. A at* APPX000086-89; APPX000319-320.

**B.     The Former and Current Matters Handled by the Matthews Firm Are the "Same or Substantially Related"**

This case serves as an exemplar of a law firm's improper representation of a current

client on a matter that is the "same or substantially related" to its representation of a former

client.  Defendant Russ Rutledge's violation of the March 12, 2008, Asset Purchase Agreement

through his adoption of the FINALROD trademark is central to this lawsuit.  As noted

previously, Mr. Rutledge agreed as a signatory to the Asset Purchase Agreement to conduct no

future business under the name FIBEROD or any names *similar thereto*.  *Complaint at Exhibit A*

(Emphasis Added).   The Matthews Firm served as intellectual property counsel to the sellers,

now part of Plaintiff.  As part of that representation, the Matthews Firm performed due diligence,

and offered representation and warranties regarding the validity of the intellectual property assets

sold, including the FIBEROD trademarks.  *Appendix, Ex. A at* APPX000086-89; APPX000319-

320.  In the course of that representation, the Matthews Firm compiled confidential information

relating the sellers' intellectual property assets, as described in the following entry on a billing

invoice dated January 14, 2008, addressed to Plaintiff:  "Complete drafts of confidential

proprietary information, including listings of all intellectual property of Fiberod …"  *Appendix,*

*Ex. A at* APPX000319.

The FIBEROD trademarks, central to this litigation, were one of the key intellectual

property assets toward which The Matthews Firm attorneys directed their due diligence efforts.

The centrality of the FIBEROD trademark to this litigation cannot be overstated.  In order to

adequately defend its clients' interests in this infringement suit, the firm representing the

defendant will likely attack the uniqueness, distinctiveness, protectability, and registrability of

12

the FIBEROD mark.  Yet, noted above, the Matthews Firm's attorneys prosecuted the FIBEROD

trademark application before the PTO and attested positively to the very same qualities of the

FIBEROD mark they now must challenge as part of this suit.  Attorneys from the Matthews Firm

argued to the PTO that "FIBEROD is a coined word and will not be found in any dictionary of

which the applicant is aware."  *Appendix, Ex. B at* APPX000356-357.  Coined words are

considered strong trademarks.  *Qwest Commc'ns. Int'l v. Arnette*, No. 3:05-CV-1614-G, 2006

U.S. Dist. LEXIS 17 at *14 (N.D. Tex. Jan. 3, 2006) ("The term Qwest is a coined term first

used by plaintiff … As a coined term, the mark is considered inherently distinctive.");

*Lawfinders Associates, Inc. v. Legal Research Center, Inc.*, 65 F. Supp. 2d 414, 425-26 (N.D.

Tex. 1998) ("Fanciful and arbitrary marks are the strongest types of marks.  Arbitrary and

fanciful terms or phrases are those which are either coined words or words which are not

suggestive of a product or service.") (internal citations omitted).  Thus, the *very same qualities* of

the FIBEROD mark at issue during The Matthews Firm's prior representation of Plaintiff John

Crane Production Solutions will be at issue during that firm's representation of Defendants in

this lawsuit.

The Matthews Firm should not be permitted to serve as counsel to Defendants in a matter

substantially related to its previous role as intellectual property counsel for Plaintiff.  A

significant risk exists that the same "confidential proprietary information" compiled by the

Matthews Firm in its prior representations could be used against Plaintiff in this matter.  As

discussed further below, a strong appearance of impropriety results from the Matthews Firm's

current role as counsel for Defendants in a trademark infringement suit in which Plaintiff is

asserting the same trademarks that the Matthews Firm filed and prosecuted; a breach of the terms

of the Asset Purchase Agreement that firm helped investigate, negotiate, and support; and in

connection with trademarks that the firm prosecuted and whose protection it sought to expand on Plaintiff's behalf.

**C.    Disqualification is Also Proper Under ABA Model Rule 1.9(a) Because Defendants' Interests in this Action are "Materially Adverse" to Plaintiff**

The Matthews Firm's representation of Defendants also violates ABA Model Rule of Professional Conduct 1.9(a).  As stated above, this Rule closely parallels Texas Disciplinary Rule of Professional Conduct 1.09, and prohibits a lawyer who has formally represented a client in a matter from thereafter representing another person in the same or a substantially related matter "in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."  ABA Model R. Prof. Conduct 1.9.

Here, there is no question that the interests of Defendants are "materially adverse" to those of Plaintiff, the Matthews Firm's former client.  The Matthews Firm's representation of Defendants' interests will likely include attacks upon the uniqueness, distinctiveness, protectability, and registrability of the FIBEROD mark.  Such attacks are "materially adverse" to Plaintiff, the current owner of the trademark the Matthews Firm's attorneys previously prosecuted before the PTO and as to which the Firm attested positively to the very same qualities currently under attack.

**D.    Policy Considerations Weigh In Favor of Disqualification**

Policy considerations unquestionably support disqualification in this case.  The Matthews Firm's conduct towards its former client is not the sort of professional conduct that this Court should condone.  With stunning disregard for its professional obligations to its former client JCPS, the Matthews Firm now seeks to act as counsel for Defendants in a trademark infringement suit relating to the very same mark it filed and prosecuted for sellers and which sellers sold to Plaintiff, the same mark at the core of the asset purchase transaction it negotiated,

14

and the same trademark it prosecuted and protected for Plaintiff.  Tolerating such conduct "by those who profess and owe undivided loyalty to their clients" tarnishes the "integrity of the judicial system."  *Duncan*, 646 F.2d at 1027.

The appearance of impropriety is strong in this case.  The Matthews Firm's continued involvement threatens to compromise the integrity of this proceeding.  Indeed, the Matthews Firm's work on opposite sides of the same matter displays a substantial appearance of impropriety.  *See NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989) ("By proving the substantial relationship between the two representations, the moving party establishes as a matter of law that an appearance of impropriety exists.")

The likelihood of public suspicion from such impropriety far outweighs any social interests which could be served by permitting the Matthews Firm's continued participation in the case.  *See In re Dresser,* 972 F.2d at 544.  There is no suggestion that other counsel could not as ably serve as Defendants' counsel in this matter.  As a result, policy considerations weigh heavily in favor of disqualification of the Matthews Firm as counsel for Defendants in this proceeding.

## V.     GRANTING THE MOTION TO DISQUALIFY WOULD NOT UNDULY PREJUDICE OR BURDEN DEFENDANTS

No significant prejudice to Defendants would result from disqualification of the Matthews Firm.  Defendants can readily "secure other counsel to defend this case without undue delay."  *Rembrandt Tech., L.P. v. Comcast Corp.*, No. 2:05-cv-443TJW, 2007 WL 470631, at *2 (E.D. Tex. Feb. 8, 2007).  This action is in its most preliminary stages.  Defendant has not yet filed its Answer.  The parties have not yet commenced discovery.  This Court has not yet issued a scheduling order.  And no dates have yet been set for either trial or dispositive motions.  Plaintiff is not seeking to disqualify the Matthews Firm "on the eve of trial."  And indeed,

Plaintiff is prepared to consent to a reasonable extension of the proceedings to allow Defendant time to engage and educate new counsel on this case.  For at least these reasons, Defendants would not be unduly burdened or prejudiced if Plaintiff's motion to disqualify the Matthews Firm is granted at this early stage.  And any potential harm to Defendants if the Matthews Firm is disqualified is simply insignificant compared to the greater, more serious potential harm to Plaintiff if the Matthews Firm is allowed to litigate against its former client on the same subject matter as its former representation.

## VI.     CONCLUSION

For all the reasons set forth above, the Matthews Firm's representation of Defendants in the present case presents a conflict of interest under Texas Disciplinary Rule of Professional Conduct 1.09 and justifies its disqualification.  Both prongs of the two-part test for disqualification adopted in Texas are satisfied:  the Matthews Firm's disqualification would not unduly prejudice or burden Defendants at this stage in the litigation, and there is a substantial risk that Plaintiff would be seriously prejudiced if the Matthews Firm is allowed to represent Plaintiff's opponent in the same or substantially related matter for which the Matthews Firm was previously hired to represent Plaintiff.

Therefore, based on the Texas Disciplinary Rules of Professional Conduct, applicable national ethical standards, and the case law of this Court, Plaintiff respectfully requests that The Matthews Firm be prevented from representing Defendants in this case and further, that it be enjoined from consulting or otherwise assisting Defendants or Defendants' counsel in this litigation.

Dated:  January 4, 2012                    Respectfully submitted,


                                           By: /s/ *Eric H. Findlay*
                                           Eric H. Findlay
                                           State Bar No. 00789886
                                           Findlay Craft, LLP
                                           6760 Old Jacksonville Hwy, Suite 101
                                           Tyler, TX  75703
                                           (903) 534-1100
                                           (903) 534-1137 FAX
                                           efindlay@findlaycraft.com


                                           Julia Anne Matheson (*pro hac vice*)
                                           Whitney D. Cooke (*pro hac vice*)
                                           FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, LLP
                                           901 New York Avenue, N.W.
                                           Washington, D.C.  20001-4413
                                           (202) 408-4000
                                           julia.matheson@finnegan.com
                                           whitney.cooke@finnegan.com

                                           Attorneys for Plaintiff John Crane Production
                                           Solutions, Inc.


                    **<u>CERTIFICATE OF SERVICE</u>**

       The undersigned hereby certifies that the foregoing document was filed electronically

pursuant to L.R. 5.1(d) on January 4, 2012.  This document was served on counsel for

Defendants *via* electronic mail on January 4, 2012 and Federal Express on January 5, 2012.

                              /s/ *Eric H. Findlay*
                              Eric H. Findlay

                                        17

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned here certifies that the parties have complied with Local Rule CV-7(h)'s meet and confer requirement.   On December 5, 2011, Julia Anne Matheson, counsel for Plaintiffs, conducted a personal conference by telephone with Terry B. Joseph, counsel for Defendants.   During that call, Ms. Matheson notified Mr. Joseph of Plaintiff's objection to his representation of Defendants and of its plans to move to disqualify his firm if it entered an appearance.   Mr. Joseph indicated that he had no plans for withdrawal.   Ms. Matheson confirmed the substance of that phone call in a letter dated December 6, 2011, notifying the Matthews Firm that it had a conflict of interest for the reasons described above, and reiterating the request that it withdraw from further representing Defendants in this matter.   Mr. Joseph continues to represent Defendants in phone calls with Plaintiff's counsel, including its negotiation of and recent filing of a request to extend Defendants' Answer deadline.   In view of the parties' clear disagreement on his issue and Mr. Joseph's recent filing, Plaintiff requests the Court's assistance in resolving this dispute.

*/s/ Julia Anne Matheson*
Julia Anne Matheson