IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN CRANE PRODUCTION          §
SOLUTIONS, INC.,               §
                               §
                    Plaintiff, §
                               § Civil Action No. 3:11-CV-3237-D
VS.                            §
                               §
R2R AND D, LLC, et al.,        §
                               §
                    Defendants. §

MEMORANDUM OPINION
AND ORDER

In this trademark infringement action, plaintiff moves for a preliminary injunction to prevent defendants from using the trademark FINALROD that plaintiff maintains is confusingly similar to its trademark FIBEROD. Both marks are used in the sale of sucker rods, which are devices used widely in the production of crude oil. For the reasons that follow,[1] the court denies the motion.[2]

---

[1]Pursuant to Fed. R. Civ. P. 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

[2]This preliminary injunction application is before the court under the procedure permitted by Rule 43(c) and is being decided on the papers without an evidentiary hearing. *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n. 1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).

I

Plaintiff John Crane Production Solutions, Inc. ("JCPS") is a manufacturing and services organization in the areas of oil and gas recovery, specifically artificial lift systems. Artificial lift systems are used in crude oil production to bring oil from underground to the surface. An oil well brings oil to the surface using the up-and-down motion of a pump jack at the top of the well that moves a plunger in the down-hole pump underground. Sucker rods connect the pump jack to the down-hole pump. The majority of oil wells worldwide contain steel sucker rods, but fiberglass sucker rods are also used. Part of JCPS's business includes manufacturing fiberglass sucker rods.

In 1996 defendant Russell P. Rutledge ("Rutledge") formed and served as Chairman and CEO of the Fiber Composite Company, Inc. ("FCC") d/b/a Fibercom and d/b/a Fiberod to manufacture and sell fiberglass sucker rods.[3] In 2002 FCC created the brand name FIBEROD for its fiberglass sucker rods, and began marketing the sucker rods under that name. In 2008 JCPS, through its predecessors-in-interest, entered into an asset purchase agreement with Rutledge to acquire all assets, property, and rights of the FCC, including the company's interest in the FIBEROD name and trademark.[4] JCPS has since invested

---

[3]In addition to FCC, Rutledge has founded other companies that manufacture different and distinct fiberglass sucker rods, including FiberFlex Products, Inc., Fiberglass Technologies, Inc. d/b/a Fibertech, and Fiberod, Inc., all of which were located in Big Spring, Texas.

[4]The FIBEROD name and logo were registered with the U.S. Patent and Trademark Office ("PTO") in 2005 and 2007, respectively.

significant sums promoting the FIBEROD brand and sells tens of millions of dollars worth of fiberglass sucker rod products annually. JCPS has locations throughout the Permian Basin area, including in Big Spring, Texas.

In 2011 Rutledge created two new companies—defendants R2R and D, LLC ("R2R") and Finalrod, Inc.—to manufacture and sell a new type of fiberglass sucker rod. Defendants have applied for trademarks in "FINALROD" and the phrase "The FinalRod You Will Ever Need,"[5] and have taken steps to begin manufacturing fiberglass sucker rods in Big Spring, including hiring at least 20 of JCPS's employees.

JCPS filed this trademark infringement action alleging that defendants' junior mark "FINALROD" is confusingly similar to JCPS's senior mark "FIBEROD," and that this confusion threatens to cause irreparable harm to JCPS's trademarks and fiberglass sucker rod business. JCPS moves for a preliminary injunction seeking to enjoin defendants from using the FINALROD mark.[6]

II

"The decision whether to grant a preliminary injunction is within the discretion of the court, but it is an extraordinary remedy that should only be granted if the movant has clearly

_____

[5]Defendants applied to the PTO for trademark protection for the marks FINALROD and "The FinalRod You Will Ever Need." After the PTO determined that there was no likelihood of confusion concerning the FINALROD mark, JCPS filed an opposition in the PTO and initiated this lawsuit. After defendant R2R answered the complaint, JCPS suspended its opposition in the PTO.

[6]There are several other pending motions in this case. The court has determined that it can address JCPS's motion for preliminary injunction before deciding the other motions.

carried its burden." *TGI Friday's, Inc. v. Great Nw. Rest., Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985)). To obtain a preliminary injunction, JCPS must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to it outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *E.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision).

III

The court addresses first whether JCPS has demonstrated a substantial likelihood that it will prevail on the merits of its trademark infringement claim.

A

"To succeed on a trademark infringement claim, a plaintiff first must show ownership of a legally protectable mark, and then it must establish infringement of the mark." *TGI Friday's*, 652 F.Supp.2d at 767 (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)).[7] "Under the Lanham Act, infringement exists if a person uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale,

---

[7]The parties do not dispute that JCPS is the legal owner of the FIBEROD mark; infringement is the sole contested issue.

distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Id.* (internal quotation marks and citations omitted).

A finding of "likelihood of confusion" requires "a probability of confusion" rather than a mere possibility. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). The following factors are used to determine the likelihood of confusion: (1) the strength of the plaintiff's trademark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser identity, (5) advertising media similarity, (6) defendant's intent, (7) actual confusion, and (8) care exercised by potential purchasers. *Am. Rice*, 518 F.3d at 329. "The digits are a flexible and nonexhaustive list. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004)). Each digit must be considered "in light of the specific circumstances of the case; otherwise, [the court] risk[s] inadvertently lowering the standard of confusion." *Scott Fetzer*, 381 F.3d at 485.

B

1

The first digit is the strength of JCPS's FIBEROD mark. "Stronger marks are entitled to greater protection." *Xtreme Lashes*, 576 F.3d at 227. JCPS argues that FIBEROD is a distinctive, strong mark that is entitled to protection. Because defendants do not dispute the

strength of FIBEROD[8] and a preliminary injunction is not warranted even if it is a strong mark, the court will assume *arguendo* that FIBEROD is a strong mark and that this digit supports a finding of likelihood of confusion.

2

The second digit is the similarity of the marks. Similarity "is determined by comparing the marks' appearance, sound, and meaning." *Elvis Presley Enters.*, 141 F.3d at 201. "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Xtreme Lashes*, 576 F.3d at 228 (citation omitted). "Nevertheless, courts should give more attention to the dominant features of a mark." *Id.* "The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enters.*, 141 F.3d at 201 (internal quotation marks and citations omitted).

The parties dispute whether, in analyzing the similarity of the marks, the court should compare the parties' respective logos or the words FIBEROD and FINALROD. Because both can be a source of trademark infringement, the court will assess the similarity between the parties' logos and between the words FIBEROD and FINALROD. The parties' respective logos are reprinted in the Appendix to this memorandum opinion and order.

---

[8]Rather than contesting the strength of the FIBEROD mark, defendants argue that because the marks are not confusingly similar, the strength of FIBEROD mark should be given little weight. The court will consider this argument in conjunction with the second digit (mark similarity).

The court finds that the parties' logos are not likely to confuse prospective purchasers regarding whether the two users are somehow associated.  The primary similarities of the logos and marks are that they contain the same or very similar stylized first-letter "F." Otherwise, the logos and marks are not similar except for the common usage of "rod," which the court addresses next.  Moreover, JCPS's FIBEROD logo features a flying (or landing) eagle with a quarter-circle above the word "FIBEROD."  By contrast, defendants' logo contains the words "Final" and "Rod" above and below, respectively, a horizontal line.  The logo pictures an oil pump jack situated on the horizontal line above the word "Rod."  And the logo contains the phrase "You've Been Waiting . . . The Future Has Arrived" under the word "Final."

Although the words FIBEROD and FINALROD are certainly more similar than are the parties' logos, the court finds that, under the circumstances of their use, they are not likely to cause confusion.  First, FIBEROD and FINALROD are two coined words that, although when spoken begin with the sound "fi" and end with the word "rod," sound different when spoken and appear different when written.  Second, the words "fiber" and "final" have distinct meanings in the oil and gas industry.   "Fiber" refers to the material—fiberglass—that both sides use to make their sucker rods.  "Final" refers to the product's quality, reliability, or longevity.  Defendants offer the undisputed assertion that they selected the term "final" to suggest that their sucker rod is of such high quality that it is the "final" one that an oil producer will ever need.  This meaning is substantiated by defendants' trademark application for the phrase "The FinalRod You Will Ever Need."  *See*

*supra* note 5.  Third, the evidence shows that both sides directly compete with companies who use similar marks containing the words "fiber" or "rod."  These companies include Flexrod, Fiberflex, Fibertech, Petro Rod, Norris Rod, Rod Lift Systems, Rod Star, and Pro Rod.  The presence of such marks in the industry decreases the likelihood of potential confusion caused by the similarities between FIBEROD and FINALROD because the sophisticated purchasers of fiberglass sucker rods are less likely to assume that the marks are associated with each other.  This is because sophisticated purchasers know that most of the sellers in the market use names and marks that connote the very product the company sells: fiberglass sucker rods.  Thus the likelihood of associational confusion between the marks is small, which supports a finding of no likelihood of confusion.

### 3

The third digit is the similarity of the products.  "The greater the similarity between products and services, the greater the likelihood of confusion."  *Elvis Presley Enters.*, 141 F.3d at 202 (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)).  Both sell the same product: fiberglass sucker rods.  Although defendants argue that their product is an innovative and improved fiberglass sucker rod, for the purposes of this digit, it is the same as JCPS's product.  This factor supports a finding of likelihood of confusion.

4

The fourth digit is the identity of the purchasers.  Defendants concede that the likely purchasers of both parties' products are the same, namely, oil and gas producers.[9]  This digit supports a finding of likelihood of confusion.

5

The fifth digit is advertising media similarity.  JCPS argues, and defendants concede, that both parties advertise or are likely to advertise using the same methods, such as trade publications, trade shows, the Internet, word of mouth, and company apparel.[10]  This factor supports a finding of likelihood of confusion.

6

The sixth digit is the defendants' intent in choosing its mark.

JCPS has adduced no direct evidence that defendants intended to trade on the reputation and goodwill of JCPS's mark.  JCPS asks the court to infer that defendants intended to trade on the reputation and goodwill of the JCPS mark because (1) Rutledge, the original owner of the FIBEROD mark, knew of the mark's favorable reputation and selected a very similar mark for his new company; and (2) his company sells the same products as

---

[9]Defendants argue that although the purchasers are the same, the sophistication of the purchasers eliminates any likelihood of confusion.  The court discusses the sophistication of the purchasers *infra* under the eighth digit: the degree of care exercised by purchasers.

[10]Defendants argue that although the advertising media used by the parties are the same, the sophistication of the purchasers eliminates any likelihood of confusion.  The court discusses the sophistication of the purchasers *infra* under the eighth digit: the degree of care exercised by purchasers.

JCPS, is located in the same city as JCPS's plant (Big Spring), and has hired at least 20 of JCPS's employees. *See Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151 n. 2 (5th Cir. 1985) ("A showing that the defendant intended to use the allegedly infringing mark with knowledge of the predecessor's mark may give rise to a presumption that the defendant intended to cause public confusion."). The court finds, however, based on its assessment of the evidence that JCPS has failed to demonstrate that defendants intended to trade on JCPS's goodwill.

First, defendants did not adopt marks that are confusingly similar, and they adopted a mark that is typical of the ones used in the trade. Second, although defendants located their companies in Big Spring, Rutledge has lived there his entire life, and Big Spring is located in the middle of the largest oil producing area in Texas. Third, hiring away plaintiff's employees is not necessarily probative of an intent to trade on the reputation of the FIBEROD mark.

Defendants' lack of intent to trade on the goodwill and reputation of JCPS's mark make this digit neutral. *See Xtreme Lashes*, 576 F.3d at 229 ("[W]ith no evidence of [] intent, this factor is neutral.").

7

The seventh digit is whether there is evidence of actual confusion. Although actual evidence of confusion "may be the best evidence of a likelihood of confusion[,] [i]t is well established . . . that evidence of actual confusion is not necessary for a finding of a likelihood of confusion." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel*

*Co.*, 550 F.3d 465, 483 (5th Cir. 2008).   JCPS has not introduced evidence of actual confusion.[11]   And defendants have introduced evidence of no actual confusion.

Defendants have adduced affidavits from four purchasers representing four companies.[12] Each avers that he has not been confused by the FIBEROD and FINALROD marks and that, due to the sophisticated nature of purchasing sucker rods, no other purchaser could be.   JCPS disputes this evidence on the ground that all four affiants are long-term acquaintances of Rutledge and have personal knowledge of Rutledge's business history. JCPS posits that this evidence is not representative of the current or future customer base. But JCPS has not presented evidence of its own that would support a finding of actual confusion by any current or potential customer.

Because JCPS has not introduced evidence of actual confusion, this digit is neutral. *See, e.g., id.* ("The district court did not resolve whether there was sufficient evidence of actual confusion, and because such evidence is not required we also find it unnecessary to pass on the question further."); *Grand Time Corp. v. Watch Factory Corp.*, 2011 WL 2412960, at *5 (N.D. Tex. June 10, 2011) (Kinkeade, J.) (finding seventh digit to be "neutral" because there was no evidence of actual confusion).

--------

[11]The court does not consider the declaration of JCPS's Vice President - General Manager averring that JCPS believes customer confusion is likely evidence of actual confusion.

[12]Defendants submitted five opposition affidavits.  Two are from the same person, Randy Foster, as an employee of two different companies, while two others are by two individuals, Skeet Mitchell and Scott Mitchell, who are employed by the same company.

- 11 -

8

The eighth digit is the care exercised by purchasers. "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Smack Apparel*, 550 F.3d at 483. But if items are expensive and buyers are sophisticated, the care exercised by purchasers can be such that confusion will not occur. *See, e.g., Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 174 (5th Cir. 1986) (holding that market for professional carpet cleaning equipment "is not the sort of purchasing environment in which confusion flourishes"). Nevertheless, "a high price tag alone does not negate other indicia of likelihood of confusion, especially if the goods or marks are similar." *Xtreme Lashes*, 576 F.3d at 231 (citing *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 595-96 (5th Cir. 1985)).

The court finds from the preliminary injunction record that purchasers of fiberglass sucker rods are highly sophisticated. Defendants' evidence demonstrates that each fiberglass sucker rod must be tailored to the specific oil well in which it will be used. This requires the purchaser to provide the manufacturer detailed data about each oil well so that the fiberglass sucker rod can be tailored to the specifications of that particular well. Because such close coordination between the purchaser and the manufacturer is required to purchase a fiberglass sucker rod, it is improbable that a customer could go through the entire process with either company without knowledge of the source of his product and whether the product is associated with another company's product.

JCPS argues that defendants' evidence of sophistication is misleading because the

engineers who have the expertise required to tailor a fiberglass sucker rod to a particular well are not the same persons charged with purchasing fiberglass sucker rods.  And it posits that smaller companies require JCPS engineers to tailor the sucker rods to the company's particular well, so the purchasers themselves need not be sophisticated.  JCPS's argument, however, misconstrues defendants' position.  Even if JCPS is correct that a company's engineers may be distinct from the employees who purchase the fiberglass sucker rod, the company must either provide the manufacturer the necessary oil well specifications or give the manufacturer access to that data to complete the purchase.  Such business transactions are at least as complex as transactions that other courts have classified as sophisticated.  *See, e.g., Oreck*, 803 F.2d at 173 ("Because these persons are buying [vacuums and extraction machines] for professional and institutional purposes at a cost in the thousands of dollars, they are virtually certain to be informed, deliberative buyers."); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 504 n. 10 (5th Cir. 1979) ("[A] person buying a 'big ticket' item such as carpeting would ordinarily be expected to be a more careful buyer than the impulse purchaser or the purchaser of a relatively inexpensive item."); *Checkpoint Sys., Inc. v. Check Point Software Tech.*, 269 F.3d 270, 285 (3d Cir. 2001) (holding that purchasers of retail store security equipment and computer security software were sophisticated); *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1217 (7th Cir. 1997) (holding that purchasers of services from engineering consulting firms were sophisticated).  The sophistication of the purchasers and the fact that fiberglass sucker rods must be designed for a specific well using information provided by the purchaser make it unlikely that a purchaser

- 13 -

would buy a fiberglass sucker rod from defendants thinking that he was acquiring it from JCPS, or that defendants' and JCPS's products were somehow associated.

JCPS argues that the similarity of the marks could cause even a sophisticated potential purchaser to attribute product reviews to the wrong companies' product. JCPS is essentially concerned about initial interest confusion. A claim for trademark infringement can be based not only on whether purchasers are confused as to the source of the product at the time of the sale, but also based on "confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *Elvis Presley Enters.*, 141 F.3d at 204 (internal quotation marks and citations omitted). Some courts have concluded that the fact that purchasers are sophisticated does not foreclose a finding of initial interest confusion if products and marks are sufficiently similar. Others have held that the character of a given market, including the sophistication of potential purchasers, is enough to overcome a likelihood of initial interest confusion. *Compare Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir. 1987) (holding there was likelihood of initial interest confusion "even though defendant's business is transacted in large quantities only with sophisticated oil traders") *with Checkpoint Sys.*, 269 F.3d at 285 (holding no likelihood of initial interest confusion, in part because purchasers were sophisticated and exercised high degree of care) *and Rust Env't & Infrastructure*, 131 F.3d at 1217 (holding no likelihood of initial interest confusion, in part because purchasers were sophisticated and market was

small).  Because even a sophisticated purchaser can be subject to initial interest confusion,[13] the court will weigh this digit and the potential for initial interest confusion along with the other digits in determining whether a likelihood of confusion exists.

The court finds that the purchasers of fiberglass sucker rods exercise a high degree of care and sophistication in making their purchases.  This factor weighs heavily in favor of a finding of no likelihood of confusion.

9

Because the eight digits are nonexhaustive factors, this court can consider other arguments that do not neatly fall within a particular digit.

JCPS argues that because the market for fiberglass sucker rods is relatively small, there is an increased likelihood of confusion.  *See Marathon Mfg. Co. v. Enerlite Prod. Corp.*, 767 F.2d 214, 219-20 (5th Cir. 1985) (per curiam).  Defendants contend that because the market for fiberglass sucker rods is small, the likelihood of confusion decreases.  In *Marathon* the plaintiff, Marathon Manufacturing Company, was one of three nickel cadmium battery manufacturers in the United States.  *Id.* at 219.  Defendant began selling a nickel cadmium battery that actually used the name "Marathon," i.e., "Marathon 10."  *Id.* at 216. Because the market for nickel cadmium batteries was "a relatively restricted market both in

---

[13]Defendants argue that the nature of the fiberglass sucker rod market and the sophistication of the purchasers render confusion between FIBEROD and FINALROD "impossible."  While the court agrees with defendants that, based on the evidence developed so far, such factors decrease the likelihood of confusion, they do not make confusion "impossible" because even sophisticated purchasers can be confused.  *See, e.g., Mobil Oil*, 818 F.2d at 260.

- 15 -

number of manufacturers and price . . . any similarity in identifying marks [was] more likely to confuse, especially when the similarity lies in identical names." *Id.* at 220. The court therefore held that "[i]t would seem virtually impossible for any nickel cadmium product sold under the name 'Marathon' not to be associated with the Marathon Manufacturing Company[.]" *Id.*

The holding in *Marathon* rested primarily on the specific nature of the nickel cadmium battery market, a fact that distinguishes this case from *Marathon*. First, unlike in *Marathon*, where the defendant used the "identical name[]" "Marathon" in a small market, the marks FIBEROD and FINALROD are neither identical nor likely to cause confusion. Second, unlike the defendant in *Marathon*, who used the identical name "Marathon" when marketing its battery in the relevant market, the fiberglass sucker rod market has many companies with names that contain the words "fiber" or "rod," such as Flexrod, Fiberflex, Fibertech, Petro Rod, Norris Rod, Rod Lift Systems, Rod Star, and Pro Rod. Unlike in *Marathon*, defendants are not using a name that is synonymous with JCPS's mark. The size of the market in this case is bigger than that in *Marathon* and it contains multiple companies that use part of the name of their product as part of their trade name, making it unlikely that a sophisticated purchaser would think that FIBEROD and FINALROD are specifically associated merely because each name contains "rod" as its final syllable.

JCPS next argues that Rutledge's previous ownership of FIBEROD increases the likelihood of confusion, especially because defendants have hired at least 20 JCPS employees to work in their new Big Spring plant, some of whom still wear FIBEROD apparel and drive

trucks that display the FIBEROD logo.  Although the court can envision how the continued display of such apparel and the FIBEROD logo *could* increase the likelihood of confusion, JCPS has not introduced other evidence, such as proof that customers have observed this conduct with sufficient frequency, to enable the court to find that this conduct increases the likelihood of confusion.  The court therefore finds that such facts do not increase the likelihood of confusion.[14]

10

After weighing the digits of confusion and the evidence presented, the court finds that JCPS has not "clearly carried its burden" of showing a likelihood of confusion and therefore a substantial likelihood that it will prevail on the merits.

The parties' logos bear little resemblance, and the parties' trademark names—FIBEROD and FINALROD—are not so similar that the sophisticated purchasers in the relevant market are likely to be confused.[15]  This is especially the case because the sophisticated purchasers must have a close working relationship with the seller so that the fiberglass sucker rod can be specifically tailored to the specifications of the purchaser's

---

[14]Moreover, even if sufficient evidence of this nature might warrant enjoining defendants from using the FIBEROD mark and logo, it does not support enjoining their use of the FINALROD mark.

[15]To the extent that JCPS relies on the potential for initial interest confusion, the court has found above that this is unlikely because purchasers of fiberglass sucker rods exercise a high degree of care and sophistication in making purchases.

well.[16]

Further, although evidence of actual confusion is not necessary for a finding of likelihood of confusion, without such a finding, the digits that favor JCPS do not carry much weight. Of the eight digits, four weigh in favor of a finding of a likelihood of confusion. Of these four, three (product similarity, purchaser identity, and advertising media identity) merely demonstrate that JCPS and defendants are direct competitors in the fiberglass sucker rod market. *See Scott Fetzer,* 381 F.3d at 485 (warning courts not to "inadvertently lower[] the standard of confusion" if the facts of the case necessarily make multiple digits favor a finding of likelihood of confusion). In this case, these factors should be given less weight due to the degree of care exercised by sophisticated purchasers of fiberglass sucker rods. Because such digits do not carry much weight, the marks are not likely to cause confusion, and the evidence shows that the purchasers are highly sophisticated, JCPS has failed "by a clear showing [to] carr[y its] burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (citation omitted).

The court therefore finds that JCPS has not carried its burden of demonstrating a substantial likelihood that it will prevail on the merits of its trademark infringement claim.

---

[16]Courts have found that the sophistication of the potential purchasers alone is enough to find that there is no likelihood of confusion even when all of the other digits weigh in favor of such a finding. *See, e.g., Perini Corp. v. Perini Constr.*, 915 F.2d 121, 128 (4th Cir. 1990) (reversing summary judgment because district court did not consider how sophistication of purchasers of construction services affected analysis, even though all other digits weighed in favor of finding likelihood of confusion).

- 18 -

IV

Because the party seeking a preliminary injunction must carry its burden of persuasion on all four factors, and JCPS has failed to carry its burden of showing a substantial likelihood of success on the merits, the court need not address the remaining three factors. *See TRAVELHOST, Inc. v. Figg*, 2011 WL 6009096, at *5 (N.D. Tex. Nov. 22, 2011) (Fitzwater, C.J.) (citing *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) (affirming denial of preliminary injunctive relief on ground that movant had failed to show irreparable injury, and pretermitting discussion of other three factors)).

\* \* \*

For the reasons explained, the court denies plaintiff's December 7, 2011 motion for preliminary injunction.

**SO ORDERED.**

March 21, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

APPENDIX

JCPS's Marks

  

Defendants' Marks

