IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN CRANE PRODUCTION SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:11-CV-3237-D |
| VS. | § § | |
| R2R AND D, LLC, et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants move under 28 U.S.C. § 1404(a) to transfer this case to the Western District of Texas. For the reasons that follow, the court denies the motion.

I

This is a trademark infringement action brought by plaintiff John Crane Production Solutions, Inc. ("JCPS") against defendants R2R & D, LLC ("R2R"), Finalrod, Inc. ("Finalrod"), and Russell P. Rutledge ("Rutledge"). The parties are in the business of selling fiberglass sucker rods to oil and gas production companies. JCPS owns and markets products under the trademark FIBEROD. JCPS alleges that defendants recently began selling fiberglass sucker rods under the name FINALROD. JCPS argues that the FINALROD name is confusingly similar to its FIBEROD trademark, in violation of the Lanham Act.

JCPS filed this suit in this court. Defendants move to transfer the case to the Western District of Texas. Defendants are located exclusively in Big Spring, Texas, which is located in the Northern District of Texas but only 40 miles from the Midland-Odessa Division of the

Western District of Texas. JCPS's principal place of business is in Illinois, and its headquarters is in Sugar Land, Texas, which is located in the Southern District of Texas. JCPS also maintains field offices in both Big Spring and Midland, Texas. Defendants argue that the Western District of Texas is more convenient for the parties and witnesses. JCPS opposes the motion.[1]

II

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro–Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.). "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)). Moreover,

> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee

---

[1] Defendants filed on March 1, 2012 a motion for leave to file a surreply in support of their motion. The court concludes that the proposed surreply does not raise matters that would materially alter the court's analysis and therefore denies the motion.

> venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")). "The weight to be accorded the plaintiff's choice of forum is diminished, however, where she brings suit outside her home forum." *Sivertson*, 2011 WL 4100958, at *3 (citations omitted).

The court must first decide "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*"); *Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). If the claim could have been filed in the district to which transfer is sought, the court must then evaluate "a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations omitted; bracketed material added). "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. The defendants must establish "good cause" for transferring the case, meaning that, "in order to support [their] claim for a transfer, [they] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (brackets in original) (quoting § 1404(a)).

III

The court must first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. JCPS alleges federal claims, therefore venue is determined by § 1391(b)(1), which allows a civil action to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Because two defendants are corporations and Texas is a state with multiple federal districts, "such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." § 1391(d). Defendants' undisputed evidence demonstrates that they have "employees in [the Western District of Texas] . . . every day working on behalf of Finalrod," and that they have "continuous and systematic . . . contacts with oil and gas companies in [the Western District of Texas]." Ds. Reply App. 1. Such contacts are sufficient to establish personal jurisdiction in the Western District of Texas, and therefore, under § 1391(d), to make the corporate defendants residents of the Western District of Texas for venue purposes. Because at least

one defendant resides in the Western District of Texas, the case could have been filed there. *See* § 1391(b)(1).

IV

Before addressing the public and private interest factors, the court determines the weight to be accorded JCPS's choice of forum.

"A plaintiff's choice is normally entitled to deference, but when she files suit outside her home forum, the weight accorded to the choice is diminished." *Sivertson*, 2011 WL 4100958, at *4 (citations omitted). JCPS's choice of the Northern District of Texas is not entitled to significant weight. Although JCPS has a plant/field office in Big Spring, its principal place of business is in Illinois and it is headquartered in the Southern District of Texas.

V

The court next evaluates the four private interest factors.

A

The first private interest factor concerns the relative ease of access to sources of proof. "The Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT & T*, 2009 WL 774350, at *2; *see Volkswagen II*, 545 F.3d at 316 ("[T]he sources of proof requirement is a meaningful factor in the analysis.").

Defendants maintain that the sources of proof are almost exclusively located in the

Western District of Texas. They first assert that their customers and potential customers reside in the Midland-Odessa area, so that any evidence related to these customers, such as custom engineering designs provided to purchasers, will also be located there. Defendants also posit that their corporate representatives, the corporate defendants, Rutledge, and the Finalrod manufacturing plant are located in Big Spring. They contend that the Western District of Texas is more convenient because Big Spring is located only 40 miles from the Midland-Odessa Division.

The court finds that this factor is neutral. Although not determinative, defendants acknowledge that much of the evidence is located in Big Spring, which is in the Northern District of Texas. More important, defendants fail to "identify any specific proof, or even categories of proof" located in the Western District of Texas. *See Kimberly–Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2009 WL 2634860, at *4 (N.D. Tex. Aug. 26, 2009) (Fitzwater, C.J.). Defendants ask that the court make the "reasonable assumption" that customer witnesses live in the Western District of Texas, and that evidence related to them is therefore located in the Western District.[2] Assuming *arguendo* that this is a reasonable assumption and that these customers have pertinent evidence, this assumption, in conjunction with defendants' general assertions that much of the evidence and many of

---

[2]The first private interest factor deals exclusively with tangible evidence, such as documents, rather than with witnesses. *See, e.g., Sivertson*, 2011 WL 4100958, at *5. Therefore, to the extent that defendants rely on the location of witnesses, they ask the court to draw the additional inference that the relevant tangible evidence is located in the same place as are those witnesses. Such a showing is not sufficient for defendants to carry their burden on this factor.

the parties are located in the Midland-Odessa area, is insufficient to carry the defendants' burden.[3] The evidence presented neither establishes that the customers are located in the Western District of Texas nor establishes that any specific proof or categories of proof such customers have will be pertinent to the underlying trademark infringement claim.

B

The second private interest factor examines the availability of compulsory process over witnesses. Defendants rely on affidavits of five non-party witnesses who are not subject to compulsory process with respect to a suit pending in the Dallas Division of the Northern District of Texas. JCPS argues that defendants do not identify a single witness for whom compulsory process may be necessary, and that there are also key non-party witnesses in the Houston area, which is located in the Southern District of Texas.

The court finds this factor to be neutral. While both sides discuss potential witnesses who are not subject to the compulsory process, neither identifies specific witnesses for which the compulsory process is *necessary* but not available. *See Sivertson*, 2011 WL 4100958, at *5 ("Because the [party seeking transfer] has not identified any witnesses for whom compulsory process will be needed, the court finds that this factor is neutral."); *see also Kimberly–Clark Worldwide*, 2009 WL 2634860, at *5 (noting lack of evidence that "suggest[s] that [the third-party] witnesses would be unwilling to testify.").

---

[3]The closest defendants come to identifying specific proof or categories of proof is their allegation that customers in the Midland-Odessa area have custom engineering designs. Defendants do not sufficiently specify, however, where such customers are located or why such designs are pertinent evidence for the underlying trademark claim.

C

The third factor is the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under third factor). A party seeking a transfer must "identify the 'key witnesses and the general content of their testimony.'" *Sargent v. Sun Trust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812). Although not determinative, this is the most significant factor in deciding a motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

Defendants identify five witnesses from the Midland-Odessa area whom it would convenience if the case were transferred to the Western District of Texas. These witnesses are sucker rod purchasers for various oil and gas companies, and defendants assert that each would testify that there is no likelihood of confusion among sucker rod purchasers between FIBEROD and FINALROD. Furthermore, defendants assert that key nonparty witnesses reside almost exclusively in this area. JCPS responds that most of its witnesses, including its general manager, director of sales, and director of marketing, are located at its Sugar Land, Texas headquarters in the Southern District of Texas. Moreover, JCPS asserts that Dallas is much more convenient than the Midland-Odessa area for the numerous nonparty witnesses from oil and gas companies located in the Dallas and Houston areas. Defendants

posit that, to the extent witnesses from oil and gas companies will testify, the individuals who actually procure sucker rods are located in the Midland-Odessa area, rather than at the companies' headquarters in the Houston and Dallas areas.

The court finds that this factor slightly favors transferring the case to the Western District of Texas. The court assigns little weight to the convenience to JCPS's employees because this factor "primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two*, 2011 WL 1103372, at *4. Moreover, the location of the individual likely to testify on behalf of JCPS oil and gas company customers is unclear.[4] This leaves only the five nonparty witnesses whom defendants identify and who "reside and conduct business in the Midland-Odessa area." Ds. Reply App. 1. Transferring the case to the Western District of Texas would likely save time and expense for these five nonparty witnesses, making this factor weigh in favor of transferring the case; but it only slightly favors transfer because, although the Midland-Odessa area is more convenient for these witnesses, Dallas is also relatively close geographically.[5]

---

[4]While JCPS does allege the location of its various customers, most of whom are in or around Houston and Dallas, its allegation that "[f]or the majority of these companies, their . . . chief procurement personnel are located at their company headquarters," P. App. 2, is insufficient to support a finding in JCPS's favor. Even if JCPS's assertion were sufficient, defendants contest whether the chief procurement officers at these companies are the persons who will be able to testify concerning the likelihood of confusion, as opposed to procurement representatives who reside in or travel to Big Spring or the Midland-Odessa area.

[5]Defendants' evidence shows that, although Midland-Odessa is located 40 miles from Big Spring, Dallas is located 293 miles from Big Spring. Thus this is not a case where the parties have identified witnesses who necessarily will be required to fly to the forum from other parts of the country.

D

The fourth private interest factor considers the practical problems that make trial easy, expeditious, and inexpensive. To the limited extent defendants address this factor, they merely repeat arguments more properly and already considered above as part of another private interest factor. The court therefore finds this factor to be neutral.

VI

The court turns next to the public interest factors. The only public interest factor that defendants address is the local interest in having localized interests decided at home. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)). Defendants argue that, because there is no connection between this suit and Dallas, this factor weighs in favor of transferring the case to the Western District of Texas. JCPS responds that, not only are some of the allegedly-confused sucker rod customers located in the Dallas area, the three named defendants are located in Big Spring, which is in the Northern District of Texas.

The court finds that this factor is neutral. Although Big Spring is closer to the Midland-Odessa Division of the Western District of Texas than to Dallas, the events giving rise to this dispute occurred primarily in Big Spring, *i.e.*, in the Northern District of Texas. Although some of the activity that allegedly caused a likelihood of confusion may have occurred in the Western District of Texas, at least a significant portion of it occurred in this

district. Thus this factor is at least neutral, and could slightly favor retaining the case in this district.

## VII

Having considered the factors *in toto*, the court holds that the defendants have failed to meet their significant burden of demonstrating that the Western District of Texas is clearly more convenient for the parties and witnesses and in the interest of justice. Although JCPS's choice of forum is not entitled to substantial deference, defendants have only demonstrated that one factor slightly favors transfer. Moreover, although not dispositive, defendants request the court to transfer the case away from the district where all three defendants reside and many of the events underlying the cause of action occurred. The court declines to transfer the case under § 1404(a) where, as here, defendants have not clearly demonstrated that a transfer would be for the convenience of parties and witnesses and in the interest of justice.

\*   \*   \*

For the foregoing reasons, the court denies defendants' January 9, 2012 motion to transfer venue and their March 1, 2012 motion for leave to file surreply to their motion to transfer.

**SO ORDERED.**

May 8, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE